FILED
2006 Sep-08  PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FIREMAN'S FUND INSURANCE** | ) | |
| **COMPANY, CHICAGO** | ) | |
| **INSURANCE COMPANY** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CV-06-VEH-0971-S** |
| | ) | |
| **CHRISTIAN CHEERLEADERS** | ) | |
| **OF AMERICA, DENNIS** | ) | |
| **MACIASZ, AN INDIVIDUAL** | ) | |
| **STEPHANIE MACIASZ, AN** | ) | |
| **INDIVIDUAL, AND DENNIS** | ) | |
| **MACIASZ, AS FATHER AND** | ) | |
| **NEXT FRIEND OF TINA** | ) | |
| **MACIASZ, A DECEASED MINOR,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This Court has before it a motion filed on June 15, 2006, by Defendants
Christian Cheerleader's of America ("CCA"), Dennis Maciasz, and Stephanie
Maciasz, as individuals, and Dennis Maciasz as father of a deceased minor ("Maciasz
Defendants" or "Maciaszs"), to dismiss and/or abstain, as to Plaintiffs Fireman's
Fund Insurance Company's ("Fireman's Fund") and Chicago Insurance Company's
("Chicago Insurance") Declaratory Judgment action filed on May 19, 2006. (Doc. 5).

1

Plaintiffs filed a reply brief on June 30, 2006. (Doc. 8).

## I.    COURT FINDINGS:

(i).    The sole issues of this action - whether Fireman's Fund and Chicago Insurance provided CCA insurance coverage and whether the terms of this coverage were breached by CCA in any way - are not yet ripe for adjudication.  The Consent Judgment entered in the state court has not yet been determined to be valid.  Further, because Alabama courts have accepted a writ of garnishment to be the proper procedural vehicle to determine issues of coverage regarding the present insurance action, Plaintiffs' request of this court in the form of the present action represents a circumvention of state court procedure.

(ii).   Evaluation of the *Ameritas* factors support the conclusion that this court should abstain from jurisdiction in this present action.

(iii).  This court's ruling and determinations in the present action may be rendered moot upon a finding by the state court that the Consent Judgment is invalid.

(iv).   There is a cloud of uncertainty regarding whether Allstate is an indispensable party which would destroy complete diversity and deprive this court of subject matter jurisdiction.  This uncertainty represents another barrier which this court must overcome before adjudication of this issue becomes appropriate.

Pursuant to these holdings, this court finds that abstention from exercise of jurisdiction in the present action is appropriate.  Accordingly, the Defendant's motion to dismiss and/or abstain is due to be **GRANTED**.

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

This action is based on a single-vehicle automobile accident which occurred

2

on July 20, 2002, in which Tina Maciasz, age 17, died as a result of catastrophic head injuries she sustained when a van she was riding in suffered a tire blow out, causing her vehicle to roll two and one-half times.  Tina Maciasz was ejected from the vehicle along with several other occupants.  At the time of the accident, Tina Maciasz was under the custody, control, and supervision of CCA.

On January 23, 2003, the Maciasz Defendants filed suit in the Circuit Court of St. Clair County, Alabama (the "underlying action") which was amended, on July 12, 2004, to assert claims against CCA for negligent entrustment in the repair, operation, and maintenance of the van.[1]

At the time of the accident, CCA had an automobile insurance policy with Allstate Insurance Company ("Allstate") and a sports general liability policy with Chicago Insurance.[2]  The Chicago Insurance policy was designed to cover claims which might arise out of the operation of day and overnight camps, while the Allstate auto policy covered claims or accidents that might arise from accidents involving vehicles being operated by or on behalf of CCA.  On September 29, 2005, CCA notified Chicago Insurance of the underlying action.

---

[1]Fireman's Fund and Chicago Insurance ask this court, inter alia, to declare that they have no obligation to defend or indemnify CCA in the underlying action.

[2]Although the policy was issued by Chicago Insurance, all the parties refer to the policy as an obligation of Fireman's Fund and/or of Chicago Insurance, its wholly-owned subsidiary.

On December 9, 2005, CCA was served with the Maciasz Defendants' first-filed Sixth Amended Complaint against CCA for negligent supervision, in which the Maciasz Defendants alleged, for the first time, that Tina Maciasz died as a result of CCA's failure to require seatbelts, properly schedule events for rest and travel, and properly train the driver of the automobile. At the time CCA was served, the case was set for trial in January of 2006. (Doc. 1, Ex. D). The Maciasz Defendants subsequently filed a second and identical Sixth Amended Complaint on January 26, 2006. Allstate subsequently agreed to defend and indemnify CCA in the underlying action.

On March 2, 2006, CCA gave notice to Fireman's Fund of the Sixth Amended Complaint[3]. (Pl.'s Resp. p. 3). Despite the fact that Counsel was served with the Sixth Amended Complaint on December 8, 2005, CCA informed Fireman's Fund that it was served with the Sixth Amended Complaint on January 26, 2006. (Pl.'s Resp. p. 4). On February 21, 2006, the case was re-scheduled for trial on April 3, 2006. (Pl.'s Resp. p. 4).

On April 1, 2006, two days before trial was scheduled to commence, counsel hired by the Fireman's Fund notified CCA, through its attorney, that it would defend

---

[3] CCA attached the January 26, 2006 Sixth Amended Complaint to its notice to Fireman's Fund. (Doc. 1, Ex. E).

4

CCA under reservation of rights, and Fireman's Fund's counsel thereafter filed a Notice of Appearance in the underlying action. (Def.'s Mot. to Dismiss/Abstain p.2). On April 3, 2006, counsel for Fireman's Fund appeared at the trial on behalf of CCA. (Def.'s Mot. to Dismiss/Abstain p.2).

On April 3, 2006, the parties waived a jury trial and proceeded before the Honorable Jim Hill of the Circuit Court of St. Clair County, Alabama, wherein a Consent Judgment was entered against CCA. (Doc. 1, Ex. K.)   In this Consent Judgment, the Maciasz Defendants agreed not to execute against CCA or its principals and the parties agreed that the Maciasz Defendants could collect against Fireman's Fund. (Pl.'s Resp. p. 3).   The only two insurers named in the Consent Judgment are Allstate and Fireman's Fund. (Pl.'s Resp. p. 3).   The Consent Judgment ordered that the damages against CCA totaled $1,500,000.00, after giving appropriate credits for previous statements, and required Allstate to pay $150,000.00. (Def.'s Mot. to Dismiss/Abstain p. 3).   Further, the judgment held that the Maciaszs were entitled to execute and collect said judgment and prosecute all claims and causes of action owned by CCA against any and all Fireman's Fund policies or other applicable policies. (Def.'s Mot. to Dismiss/Abstain p. 3).

Fireman's Fund challenged the enforcement of the Consent Judgment by filing post-judgment motions including a Motion to Intervene, a Motion to Stay Execution,

and Rule 59 and 60 Motions to Alter or Amend the Consent Judgment. (Def.'s Mot. to Dismiss/Abstain p. 3).  Fireman's Fund asserts that the Consent Judgment is unenforceable against Fireman's Fund because it violated Fireman's Fund's due process rights and was entered into by the Maciasz Defendants and CCA in collusion. (Def.'s Mot. to Dismiss/Abstain  p. 3-4).

On May 22, 2006, two days after Fireman's Fund filed this federal action, the St. Clair County Circuit Clerk filed the state court's May 18, 2006 Order Granting Fireman's Fund's Motion to Intervene. (Doc. 1, Ex. A).  The state court did not rule on the remaining post-judgment motions filed by Fireman's Fund. (Doc. 1, Ex. A).

On June 8, 2006, the Maciasz Defendants filed, in the underlying action, a counterclaim for declaratory relief against Fireman's Fund. (Pl.'s Resp. p. 4). Fireman's Fund has since moved to dismiss the counterclaim for the following reasons: (1) Fireman's Fund's motions for post-judgment relief are not pleadings or claims to which the Maciasz Defendants may file a counterclaim; (2) the Maciasz Defendants failed to name Chicago Insurance in their counterclaim; (3) the Maciasz Defendants' Counterclaim is a compulsory counterclaim to the federal action before this Court; and (4) the federal action was first filed. (Pl.'s Resp. p. 4).

## II.    APPLICABLE LAW AND ANALYSIS

Fireman's Fund and Chicago Insurance filed this Declaratory Judgment action

seeking a determination as to the issue of coverage provided to CCA.  A related state court proceeding is pending in the Circuit Court of St. Clair County, Alabama before Judge Jim Hill.  The state court lawsuit was filed prior to the Declaratory Judgment action.  The question before this court is whether it should exercise its discretion to allow this declaratory judgment action to proceed.  As explained below, the Court determines, in its discretion, that abstention from exercise of jurisdiction is appropriate.  Accordingly, the Defendants' Motion to Dismiss is due to be granted.

## A.      Subject Matter Jurisdiction

This court's judicial authority is limited by the Constitution to resolution of "cases" and "controversies."  U.S. Const. art. III § 2.  This requirement applies equally to cases asserted under the Declaratory Judgment Act. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)(finding that Act, "in its limitation to 'cases and actual controversy,' manifestly has regard to the constitutional provision, [and thus] is operative only in respect to controversies which are such in the constitutional sense").

Against this backdrop, this court must determine whether it is appropriate for it to assert jurisdiction under the Act over the coverage issue in question.  The pendency of a determination by a state court of the validity of the Consent Judgment in question causes the coverage issue to be unripe for judicial review in this present

action. Furthermore, should the state court determine that the Consent Judgment was in fact entered into collusively and is therefore invalid, this present action and all determinations that result from this action would become moot.

Accordingly, this court determines that the issue of insurance coverage - the only issue the Plaintiffs claim to have presented in this present action - is not sufficiently ripe to present a "case" or "controversy" here and, therefore, Plaintiffs' claims pertaining to coverage provided to CCA are not ripe for adjudication. Moreover, the present action would not serve a useful purpose in clarifying the legal relations at issue due to the fact that coverage issues are not ripe for determination, given the challenge to the validity of the Consent Judgment. Additionally, a final resolution of the present action would not settle the overall controversy between these parties.

Also, for the aforementioned reasons, the present action would create unnecessary friction between this court and the state court because Alabama courts have decided unanimously that a writ of garnishment is the proper procedural vehicle for the Maciasz Defendants to satisfy their judgment against CCA, provided the Consent Judgment is found to be valid. *St. Paul Fire and Marine Ins. Co. v. Johnson Homes of Meridian, Inc.*, 2005 WL 2739141 at *9 (S.D.Ala.)) ("Alabama courts have decided unanimously that a writ of garnishment is the proper procedural vehicle for

8

Ms. Hampton to satisfy her judgment against Johnson Homes, [giving the state courts] a particularly strong interest in deciding the Alabama contract issues raised in the federal declaratory action in the state court given their collective decisions on the procedural vehicle question and the length of their association with the facts surrounding the underlying action against Johnson Homes). Therefore, the state court would be able to address not only the issue of the validity of the Consent Judgment but also coverage issues within the ancillary garnishment proceeding, based on the state court's, "collective decisions on the procedural vehicle question and the length of their association with the facts surrounding the underlying action". *Id*. at *9.

This court's decision as to the coverage issue would in a sense be deciding the matter at issue in the garnishment proceeding before the garnishment proceeding was appropriately conducted, creating friction between this court and the state court. Further, this circumvention of the state court's procedure would create a "judicial foot-race" to res judicata regarding an issue that is not yet ripe for determination.

Further, if Defendants' assertion that Allstate is an indispensable party to this present action is found to be of merit, diversity in this present action would be destroyed and, therefore, this court would be deprived of subject matter jurisdiction.[4]

---

[4]Though this court has not analyzed whether or not Allstate is an indispensable party to this present action, the court notes that the presence of this possibility creates a cloud of uncertainty regarding the exercise of jurisdiction in the case at bar.

9

The issues of justiciability present as to whether this court should exercise jurisdiction over this action - 1) the fact that the sole issue placed before this court is unripe for adjudication; and 2) the fact that a determination in the state court that the Consent Judgment entered into on April 3, 2006, was invalid would render this action and all determinations found herein moot - along with the possibility that due to lack of complete diversity, this court may be deprived of subject matter jurisdiction in the present action, in their aggregate, support a finding that abstaining from exercise of jurisdiction is the appropriate course in this matter.  As such, Defendant's Motion to Dismiss and/or Abstain is due to be granted.

**B.      Discretion to Exercise Jurisdiction Under the Declaratory Judgment Act**

Even if this court possessed jurisdiction in this case - that is, even if there were presently a ripe controversy between the parties in this case - it would decline to exercise jurisdiction over Plaintiffs' Declaratory Judgment Act claims.   The Declaratory Judgment Act is an authorization, not a command. *Wilton v. Seven Falls*, 515 U.S. 277, 288 (1995)("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants").  It gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491-94 (1942) ("Although the district court had jurisdiction of the suit under the Federal Declaratory Judgment Act, 28 U.S.C.A. §

400, it was under no compulsion to exercise that jurisdiction"). Among other reasons, a court may deny declaratory relief because there exists a pending state court proceeding in which the matters in controversy between the parties may be fully litigated. *Mutual Life Ins. Co. v. Adams*, 972 F.Supp 1386, 1390 (N.D. Ala. 1997)("'[O]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'").

In *St. Paul Fire and Marine Ins. Co.*, it was declared "imperative that this court not race the state court to res judicata at the behest of [the plaintiff] St. Paul, given that this case involves the application of state law and is best decided by the state courts..." *Id.* at *9.

Should the state court determine that the Consent Judgment between CCA and the Maciasz Defendants was entered into collusively, the present action would then be rendered moot. Because the state court action and the present action are so heavily intertwined, analysis under the *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir.2005) factors is appropriate in this matter.

The *Ameritas* factors are as follows:

1. The strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts.

2. Whether the judgment in the federal declaratory action will settle the controversy.

3. Whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue.

4. Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" - to provide an arena for a race for res judicata or to achieve a federal hearing in a case.

5. Whether the use of the declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction.

6. Whether there is an alternative remedy that is better or more effective

7. Whether the underlying factual issues are important to an informed resolution of the case.

8. Whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

9. Whether there is a close nexus between the underlying factual and legal issues and state law and or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id*. at 1331.

The Court in *Ameritas* stated that these enumerated factors were not exhaustive, but merely a list of factors to be considered when evaluating whether abstention is proper.  In addition to the above mentioned factors, the *Ameritas* court found the possibility of being able to appropriately exercise jurisdiction over any non-diverse third-party litigants to also be a determinative factor, leading to the

conclusion that proceeding with declaratory action "would amount to unnecessary and inappropriate gratuitous interference with more encompassing and currently pending state court actions." *Ameritas*, 411 F.3d at 1331. This court holds that the above factors support abstain from exercising jurisdiction in the present action.

Several different factors support the court's conclusion that the St. Clair County Circuit Court is the better venue for the parties to litigate this controversy.

First, although the amount of time the state court dealt with the insurance claim that is the subject of the present action is in dispute, neither party can deny that the state court has evaluated the underlying facts for a greater period of time than has this court.

Second, this court rejects the Plaintiffs' assertion that the state court would be insufficient to hear this case due to the fact that interpretation of the insurance contract in question will require a court to apply Texas law rather than the law of Alabama. Plaintiffs look to the doctrine of *lex loci contractus*, which holds that a contract is governed by the laws of the state where it is made, formed, or otherwise executed. *Lemuel v. Admiral Ins. Co.*, 414 F.Supp. 2d 1037, 1049 (M.D. Ala. 2006); *Twin City Fire Ins. Co. v. Colonial Life & Acc. Ins. Co.*, 124 F.Supp. 2d 1243, 1247 (M.D. Ala. 2000); *Stovall v. Universal Const. Co., Inc.*, 893 So.2d 1090, 1102 (Ala. 2004). Therefore, Plaintiffs argue, because this policy was issued by Fireman's Fund's subsidiary, Bene-Marc, Inc, located in Fort Worth, Tx., the law that governs

this case would be Texas law.

The Defendants do not put forth a response to this argument, nor do they assert a claim that only Alabama law would be utilized in the resolution of this dispute. Nevertheless, assuming that Plaintiffs' arguments are correct, this court is in no better position than is an Alabama state court regarding the Texas law that would be applied.  Therefore, as the court in *Lexington Ins. Co. v. Rudolph F. Rolison, Sr., et al*, 2006 WL 4151 (S.D. Ala May 16, 2006)(No. CIV.A. 06-0025 - WS - M) held, the "desire of insurance companies... to receive declarations in federal courts on matters of purely state law has no special call on the federal forum." *Id.*, (citing *State Auto. Ins. Companies v. Summy*, 234 F.3d 131, 136 (3rd Cir.2000), and *Prudential Ins. Co. v. Doe*, 140 F.3d 785, 789 (8th Cir.1998)).

Third, all of the parties needed to make a determination as to whether the Consent Judgment was entered into collusively - requiring evidence of communications between the Maciasz Defendants and CCA, representations to the court, and other actions prior to the Consent Judgment - as well as all of the parties necessary for the ancillary garnishment proceeding, are present in the state court action, whereas this court is only charged with determining half of this controversy and has before it only the parties necessary to decide that half.  It would seem that the matter before this court is similar to that in *Lexington*, in that the state court, "[s]imply put,... would be better able to see the whole board, rather than just the sliver

14

presented in federal court." *Lexington*, at 18.

Finally, regarding the issue of the absence of a possibly indispensable party (Allstate), not only does this issue create the potential to destroy diversity and therefore destroy this court's subject matter jurisdiction over the present action, the cloud of uncertainty revolving around the issue itself creates yet another barrier this court must overcome before adjudication of this matter is appropriate. In *Ameritas*, the fact that there was a question as to whether another party should have been joined, when aggregated with all other factors present, led to the conclusion that abstention was appropriate. This court, applying *Ameritas*, holds that the aforementioned factors support a conclusion that this court should not exercise jurisdiction over this matter.

### III.    CONCLUSION

Based upon the rationale set forth above and in the overall interests of judicial economy and avoidance of duplicative and/or piecemeal litigation, this court, in its discretion, declines to exercise jurisdiction over this case. Accordingly, this Court finds that the Defendant's Motion to Dismiss and/or Abstain is due to be **GRANTED**.

**DONE** and **ORDERED** this 8th day of September, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge